[Cite as *State v. Gipp*, 2017-Ohio-8907.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27635 |
| | : | |
| v. | : | Trial Court Case No. 17-CR-225 |
| | : | |
| STEVEN GIPP | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 8th day of December, 2017.

. . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. JANS, Atty. Reg. No. 0084470, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P.O. Box 340214, Beavercreek, Ohio 45434
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, P.J.

{¶ 1} Steven Gipp appeals from his conviction and sentence on one count of fourth-degree felony domestic violence.

{¶ 2} Gipp advances three assignments of error. The first two address the legal sufficiency and manifest weight of the evidence to support his conviction. The third challenges the trial court's decision to declare the complainant a hostile witness at trial.

{¶ 3} The record reflects that Gipp was charged with two counts of domestic violence based on a January 21, 2017 incident that occurred in an apartment he shared with his fiancée, the complainant. The first count charged him with a fifth-degree felony based on his knowledge that the victim was pregnant. The second count charged him with a fourth-degree felony based on his having a prior domestic-violence conviction. The matter proceeded to an April 17, 2017 bench trial at which the State presented three witnesses.

{¶ 4} The first witness was Montgomery County Sheriff's Deputy Brian Godsey. He testified that he was dispatched to Gipp's apartment on a domestic-violence call. Upon entering the apartment, he observed Gipp passed out in bed. He proceeded to arrest Gipp and to take photographs of the complainant, who had visible "scrapes" on her face. He also took pictures of the interior of the apartment.

{¶ 5} The second witness was Kyle Baranyi, a detective with the Montgomery County Sheriff's office. He testified that he conducted a post-arrest interview of Gipp. According to Baranyi, Gipp explained that he came home intoxicated and began arguing with the complainant. Gipp admitted knowing that she was pregnant. He also admitted having a prior domestic-violence conviction. Baranyi testified that Gipp denied "anything

physical" happening during the argument. During Baranyi's testimony, defense counsel stipulated to Gipp's prior domestic-violence conviction.

{¶ 6} The final witness at trial was the complainant. Although the prosecutor had subpoenaed her, she initially failed to appear to testify. Her attendance then was secured on a material-witness warrant. At the outset of her testimony, she identified herself as Gipp's fiancée and stated that she did not want to testify and did not want to incriminate him. (Tr. at 24-27). After being admonished by the trial court, she acknowledged being pregnant and residing with Gipp. When asked by the prosecutor what had happened during the incident in question, the complainant insisted that she and Gipp had an argument that was "only verbal." (*Id.* at 28). The State then moved to treat the complainant as a hostile witness. Over defense counsel's objection, the trial court sustained the motion. (*Id.* at 20-31).

{¶ 7} The complainant proceeded to tell the prosecutor that she and Gipp were mutually "tussling" in the apartment. She claimed that she and Gipp both had "started it" and that they both were throwing "fists." The complainant denied being able to recall who threw the first punch. (*Id.* at 31-33). She insisted that they had hit each other with a folding table and a mirror. (*Id.* at 34-36). With regard to the scratches or scrapes on her face, she testified that she and Gipp both had caused them. (*Id.* at 36). The complainant acknowledged that she left the scene by exiting the back door and going to a neighbor's house, where she called her grandmother and then called the police. (*Id.* at 37-41).

{¶ 8} On cross-examination by defense counsel, the complainant reiterated her testimony that the physical altercation was mutual and that she and Gipp "both" had started it. (*Id.* at 47). The complainant also stated that she was not testifying freely, that

she was doing so only under threat of arrest, and that she did not want to be there. (*Id.* at 48-49).

{¶ 9} After considering the evidence, the trial court found Gipp guilty on both counts of domestic violence. (*Id.* at 65-66). It merged the two counts for sentencing, and the State elected to proceed on count two, the fourth-degree felony. (*Id.* at 67). The trial court imposed a nine-month prison sentence. This appeal followed.

{¶ 10} In his first two assignments of error, Gipp challenges the legal sufficiency and manifest weight of the evidence to sustain his conviction. In support, he asserts that the complainant started the verbal argument and that they then "tussled" and hit each other while engaged in "mutual fighting." Gipp also notes that a child was asleep when the police officer arrived and that the officer saw no marks on the table or mirror involved in the incident. Finally, he notes the complainant's testimony that the marks on her face resulted from the mutual altercation.

{¶ 11} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶ 12}** Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 13}** With the foregoing standards in mind, we conclude that Gipp's conviction is supported by legally sufficient evidence and is not against the weight of the evidence. For both counts of his indictment, the only real issue is whether he knowingly caused or attempted to cause physical harm, as required by R.C. 2919.25(A). As set forth above, the complainant testified that Gipp hit her with his fists and struck her with objects including a table and a mirror. She also testified that he was at least partially responsible for the scrapes or scratches on her face. This testimony alone, if believed, is legally sufficient to support a finding that Gipp knowingly caused or attempted to cause physical harm to her.

**{¶ 14}** We reach the same conclusion with regard to Gipp's manifest-weight challenge. As the trier of fact, the trial court "was free to believe all, part, or none of the testimony of each witness and to draw reasonable inferences from the evidence presented." *State v. Fields*, 2d Dist. Clark No. 2016-CA-76, 2017-Ohio-7745, ¶ 42, citing

*State v. Baker*, 2d Dist. Montgomery No. 25828, 2014-Ohio-3163, ¶ 28. Here the trial court reasonably could have believed the complainant's testimony that Gipp hit her with his fists and other objects. The trial court also reasonably could have disbelieved the complainant's testimony that the physical altercation was mutual and that she had hit Gipp. Such a conclusion is particularly reasonable given that (1) the complainant sustained scrapes or scratches to her face, (2) the record contains no evidence that Gipp sustained any type of injury, (3) the complainant exited the back door of the apartment and fled to a neighbor's house where she called the police, and (4) the complainant admittedly did not want to testify, did not want to incriminate Gipp, and did not want him to go to jail. For the foregoing reasons, the trial court acted within its discretion in crediting the complainant's testimony about Gipp hitting her and in finding him guilty of domestic violence. After reviewing the evidence, we cannot say the trial court clearly lost its way and created a manifest miscarriage of justice. The present case is not one in which the evidence weighs heavily against Gipp's conviction. The first two assignments of error are overruled.

{¶ 15} In his third assignment of error, Gipp challenges trial court's decision to declare the complainant a hostile witness. He argues that the trial court erred in doing so because the State failed to establish that it was surprised by her testimony.

{¶ 16} "A 'hostile witness' is one who surprises the calling party at trial by turning against that party while testifying." *State v. Johnson*, 2015-Ohio-5491, 55 N.E.3d 648, ¶ 33 (2d Dist.), citing *State v. Darkenwald*, 8th Dist. Cuyahoga No. 83440, 2004-Ohio-2693, ¶ 15. "[A] party demonstrates surprise when a witness's trial testimony is 'materially inconsistent' with a prior statement and counsel did not have reason to believe that the

witness would repudiate the prior statement." *Id.*, citing *State v. Travis*, 165 Ohio App.3d 626, 2006-Ohio-787, 847 N.E.2d 1237 (2d Dist.) and *State v. Eicholtz*, 2d Dist. Clark No. 2012 CA 7, 2013-Ohio-302, ¶ 38. When a trial court makes a hostile-witness determination, the party calling the witness may proceed with leading questions "so that, in effect, the direct examination becomes a cross-examination * * *." *Id.* A trial court has broad discretion to determine whether a witness qualifies as a hostile witness. *Id.* at ¶ 35.

{¶ 17} Here the complainant began her testimony about the incident in question by asserting that it involved a dispute that was "only verbal." (Tr. at 28). The prosecutor appears to have been surprised by this response, which would not support a domestic-violence charge. (*Id.*). At a sidebar, the prosecutor admitted knowing that the complainant did not want to prosecute Gipp. The prosecutor denied knowing, however, that the complainant would change her story. (*Id.* at 29). The prosecutor explained that the complainant's testimony was "contradictory" to the prosecutor's "prior conversations with the victim * * *." (*Id.* at 30). The trial court then allowed the prosecutor to treat the complainant as a hostile witness. (*Id.* at 30-31).

{¶ 18} Upon review, we see no abuse of discretion in the trial court's decision. The complainant's testimony about engaging in nothing more than a verbal argument with Gipp surprised the prosecutor. In addition, the prosecutor explained that the complainant's testimony was "contradictory" to prior statements the complainant had made about the incident. Under these circumstances, we see no abuse of discretion in the trial court allowing the prosecutor to ask leading questions based on a hostile-witness determination.[1] The third assignment of error is overruled.

---

[1] In addition to showing surprise, the State also was required to demonstrate that the

**{¶ 19}** The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies mailed to:

Mathias H. Heck
Heather N. Jans
Robert Alan Brenner
Hon. Richard Skelton

---

complainant's testimony resulted in "affirmative damage" to its case. *Johnson* at ¶ 33. Affirmative damage exists when a witness's trial testimony harms the case of the party that called the witness. *Id.* In his assignment of error, Gipp does not raise the issue of affirmative damage. He argues only that the prosecutor failed to show surprise. In any event, the complainant's testimony about having only a verbal argument with Gipp plainly did damage the prosecution's domestic-violence case.